UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| HEATHER DIAN D., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  No.  1:23 CV 206 JMB |
| | ) |
| MARTIN J. O'MALLEY, | ) |
| Commissioner of Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court for review of an adverse ruling by the Social Security Administration.  The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).  For the reasons set forth below, the ruling is reversed and remanded for further proceedings.

**I. Procedural History**

On January 10, 2022, Plaintiff Heather D. applied for disability insurance benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401, *et seq.*, and for supplemental security income under Title XVI of the Act, 42 U.S.C. §§ 1381, *et seq.*  Plaintiff alleges she became unable to work on April 15, 2019, due to depression, anxiety, paranoia, high blood pressure, high cholesterol, high triglycerides, polycystic ovarian syndrome, pre-diabetic, severe sleep apnea, left and right carpal tunnel syndrome, neuropathy, lower back pain, degenerative disc disease, arthritis, and bulging discs.  Plaintiff later supplemented her applications to include the onset of headaches in March 2022 (Tr. 114, 283-98).  Plaintiff's applications were denied initially and upon reconsideration, and she requested a hearing before an ALJ (Tr. 113-62, 193-200, 210-11).  On

March 14, 2023, following an administrative hearing conducted by telephone, the ALJ issued a decision finding Plaintiff was not disabled and denying benefits (Tr. 10-23, 31-69). Plaintiff sought review of the ALJ's decision before the Appeals Council of the Social Security Administration, which was denied on September 27, 2023 (Tr. 1-6). Accordingly, the decision of the ALJ is the final decision of the Commissioner. As Plaintiff has exhausted her administrative remedies, her appeal is properly before this Court. See 42 U.S.C. § 405(g).

## II. Evidence Before the ALJ

The administrative record before the Court includes Plaintiff's medical records from May 2021 to February 2023. As Plaintiff's arguments relate to her physical limitations arising from her migraines, which began in March 2022, the Court will focus on the evidence pertaining to this particular condition. Because the disability and function reports in this matter predate a majority of the medical records related to Plaintiff's migraines, the Court will primarily consider the relevant medical records and hearing testimony.

### A. Medical Records

On March 23, 2022, Plaintiff sought treatment at an urgent care center for frequent headaches and fatigue, which had lasted for several weeks and for which over the counter medications had not helped. Plaintiff presented to Nurse Practitioner ("NP") Amy Watkins with "migraine" as a "recurrent problem," which she explained had been occurring intermittently and "waxing and waning" (Tr. 1095). Plaintiff described the pain quality as "aching" and "similar to prior headaches," with symptoms of "numbness, phonophobia, photophobia, and tingling" (Tr. 1095). NP Watkins referred Plaintiff to Neurology for evaluation of her chronic headaches and prescribed sumatriptan (i.e., Imitrex) to treat her symptoms (Tr. 1098).

On April 12, 2022, Plaintiff saw her primary care physician, Dr. Jenny Eichhorn, for an annual exam.  Dr. Eichhorn noted Plaintiff's March 2022 urgent care visit (Tr. 1106-1113).  She also identified "[c]hronic nonintractable headache" as a problem addressed during the visit, noted that Plaintiff had been prescribed Imitrex but had not used it frequently, and recommended that Plaintiff continue her plan to follow up with Neurology (Tr. 1108).

On April 25, 2022, Plaintiff saw Dr. Mark Farrenburg at Cape Neurology Specialists (Tr. 702-08).  Plaintiff presented to Dr. Farrenburg with bitemporal, nonradiating headaches that occurred slowly over hours, with intensity ranging from 5-7 out of 10.  Plaintiff reported that the headaches were occurring three times per week, were triggered by stress, and were alleviated by relaxation.  Dr. Farrenburg noted that in 2018 Plaintiff had seen a neurologist for intermittent headaches with similar symptoms, as well as an ophthalmologist who thought she had papilledema.[1]  Dr. Farrenburg conducted a physical exam, the results of which were largely unremarkable apart from a finding of mild bilateral papilledema (Tr. 702-06).  Dr. Farrenburg suspected idiopathic intracranial hypertension ("IIH") as the cause of Plaintiff's symptoms.  He ordered a brain MRI, referred Plaintiff to Ophthalmology, and prescribed topiramate (i.e., Topomax) (Tr. 706).

Plaintiff underwent a brain MRI on May 9, 2022.  The results showed no evidence of an "acute infarct" but did show "[n]onspecific scattered T2 hyperintense foci within the supratentorial white matter," indicating "[c]hronic microvascular ischemic change is the primary diagnostic consideration" (Tr. 856).  Plaintiff had an appointment at the Marion Eye Center on May 23, 2022, with Ophthalmologist Maqbool Ahmad.  Upon reviewing Plaintiff's MRI results and performing

---

[1] According to Dr. Farrenburg's notes, the neurologist in 2018 had ordered an MRI and a lumbar puncture, but Plaintiff did not undergo either of these tests due to lack of insurance.

an eye exam, Dr. Ahmad determined Plaintiff had possible early Papilledema. He indicated that he would continue to monitor Plaintiff's condition and that no treatment was needed at that time, and he recommended reevaluation in three months (Tr. 905-09).

On June 3, 2022, Plaintiff saw Dr. Farrenburg for a follow-up appointment regarding her headaches (Tr. 1057-1063). Dr. Farrenburg noted that Plaintiff's MRI was "unrevealing for any intracranial lesion that would be causing increased pressure," and that her ophthalmology visit had revealed mild papilledema (Tr. 1057). Plaintiff reported that her headaches had not improved at all with Topamax, that she was now getting daily headaches, and that Tylenol ibuprofen "helps some but not very much" (Tr. 1057). Dr. Farrenburg continued to suspect IIH, he stopped Plaintiff's topiramate prescription, and he ordered a lumbar puncture (Tr. 1061). At a subsequent follow-up appointment on July 21, 2022, Dr. Farrenburg noted that the results of the lumbar puncture did not show elevated pressure, and that he had started Plaintiff on zonisamide, which she felt "helped a little bit with her headaches but not completely" (Tr. 1065). Dr. Farrenburg increased Plaintiff's zonisamide dosage and instructed her to provide a clinical update after her next ophthalmology appointment (Tr. 1070).

At Plaintiff's November 21, 2022, follow-up visit with Neurology, Dr. Farrenburg noted Plaintiff had seen Ophthalmology "who reported likely pseudo papilledema" (Tr. 1076). Dr. Farrenburg further noted that Plaintiff had stated the increased zonisamide dosage did not help at all; that he had offered to try nortriptyline for headaches, but she had declined due to her history of difficulty with weight loss; and that he could not put her on propranolol due to low blood pressure. Dr. Farrenburg had therefore started her on Emgality injections, which "helped quite a bit with her headaches" (Tr. 1076). Plaintiff's headaches had decreased to twice a week and presented as mild to moderate (Tr. 1076). At that stage, Dr. Farrenburg suspected "transformed

migraine," and his plan was to continue Plaintiff on Emgality injections and give her samples of Ubrelvy (Tr. 1081).  He recommended that Plaintiff return to the clinic in six months (Tr. 1081).

### B. Hearing Testimony

Plaintiff testified at the February 2023 administrative hearing that she began experiencing migraines in 2022 (Tr. 44-45).  At the time of the hearing, Plaintiff had active migraines "[a]t least a couple times a month," and she had been prescribed Emgality and Ubrelvy to help manage her symptoms (Tr. 45).  Plaintiff stated that the "Emgality shot has really helped to where she was at before" (Tr. 45).  Plaintiff explained that with the onset of a headache, in order for her symptoms to subside to a point at which she could do activities, she would have to "lay down in a quiet, dark spot" for "an hour or so" (Tr. 45).

Also at the hearing, Vocational Expert ("VE"), Karen Kane-Thaler, was asked to testify about the employment opportunities for a hypothetical person of Plaintiff's age, education, and work experience with the following limitations:

> [P]erform light work lifting 10 pounds frequently, 20 pounds occasionally with standing and walking six hours in an eight hour day, sitting six hours in an eight hour day.  No ladders, ropes, and scaffolds.  Occasional ramps and chairs.  Occasional stooping, crouching, and crawling.  Capable of simple, routine tasks with no fast-paced production rate demands or quotas.  And little to no change in the work routine day-to-day.  No more than occasional changes in the work setting. … Only occasional interaction required with supervisors and coworkers.  No close tandem work.  Only occasional interaction with the general public.

(Tr. 57).  The VE testified that such a person would not be able to perform Plaintiff's past relevant work, but that they could perform other work in the national economy (Tr. 57-58).  The ALJ then qualified that the hypothetical person would need to change their position every 30 minutes from seated to standing, taking a minute or two to change position; could frequently, but not constantly use their hands for fine and gross manipulation; and would be limited to a sedentary position.  The

VE testified that such hypothetical person would be able to fulfill the positions of lens inserter, toy stuffer, and touchup screener (Tr. 58-62).

When asked whether a typical employer would tolerate a 15 to 30 minute unscheduled break during the workday, the VE testified that it could impede an individual's ability to maintain employment and it would be considered an accommodation for which the individual would need to provide supporting medical documents (Tr. 63-64).  The VE similarly testified that, based on her experience, if an employee is off task more than 15% of the day on a consistent basis, that may impact their ability to maintain employment (Tr. 64).  As relevant, the VE was not asked, and did not testify to, whether an individual's occasional need to take unscheduled breaks longer than one hour would impede their ability to maintain employment.

### III.  Standard of Review and Legal Framework

To be eligible for disability benefits, a claimant must prove that she is disabled under the Act.  Baker v. Sec'y of Health & Human Servs., 955 F.2d 552, 555 (8th Cir. 1992).  The Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).  A claimant will be found to have a disability "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B); see also Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

The Social Security Administration has established a five-step process for determining whether a person is disabled.  See 20 C.F.R. § 404.1520(a)(4); Moore v. Astrue, 572 F.3d 520, 523

(8th Cir. 2009). "Steps one through three require the claimant to prove (1) she is not currently engaged in substantial gainful activity, (2) she suffers from a severe impairment, and (3) her disability meets or equals a listed impairment." Pate-Fires v. Astrue, 564 F.3d 935, 942 (8th Cir. 2009) (citation omitted); see also Bowen, 482 U.S. at 140-42 (discussing the five-step process). "If the claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five." Pate-Fires, 564 F.3d at 942. "Prior to step four, the ALJ must assess the claimant's residual functional capacity ('RFC'), which is the most a claimant can do despite her limitations." Moore, 572 F.3d at 523 (citing 20 C.F.R. § 404.1545(a)(1)). At step four, the ALJ determines whether the claimant can return to her past relevant work, reviewing the claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(e)-(f). The burden at step four remains with the claimant to prove her RFC and establish that she cannot return to her past relevant work. Moore, 572 F.3d at 523; see also Dukes v. Barnhart, 436 F.3d 923, 928 (8th Cir. 2006); Vandenboom v. Barnhart, 421 F.3d 745, 750 (8th Cir. 2005). If the ALJ holds at step four that a claimant cannot return to past relevant work, the burden then shifts at step five to the Administration to establish that the claimant maintains the RFC "to perform a significant number of jobs within the national economy." Banks v. Massanari, 258 F.3d 820, 824 (8th Cir. 2001) (citation omitted); see also 20 C.F.R. § 404.1520(g).

The Court's role on judicial review is to determine whether the ALJ's findings are supported by "substantial evidence in the record as a whole." Pate-Fires, 564 F.3d at 942 (quotation omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Biestek v. Berryhill, 587 U.S. 97, 103 (2019) (quotation and citation omitted). "[T]he threshold for such evidentiary sufficiency is not high." Id. Stated another way, substantial evidence is "less than a preponderance, but enough that a

reasonable mind might accept it as adequate to support a decision." Juszczyk v. Astrue, 542 F.3d 626, 631 (8th Cir. 2008) (quotation omitted). In determining whether the evidence is substantial, the Court considers evidence that both supports and detracts from the ALJ's decision. Cox v. Astrue, 495 F.3d 614, 617 (8th Cir. 2007).

The Eighth Circuit has repeatedly emphasized that a district court's review of an ALJ's disability determination is intended to be narrow and that courts should "defer heavily to the findings and conclusions of the Social Security Administration." Hurd v. Astrue, 621 F.3d 734, 738 (8th Cir. 2010) (citing Howard v. Massanari, 255 F.3d 577, 581 (8th Cir. 2001)). Despite this deferential stance, a district court's review must be "more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision." Beckley v. Apfel, 152 F.3d 1056, 1059 (8th Cir. 1998). The district court must "also take into account whatever in the record fairly detracts from that decision." Id.; see also Stewart v. Sec'y of Health & Human Servs., 957 F.2d 581, 585-86 (8th Cir. 1992) (setting forth factors the court must consider). Finally, a reviewing court should not disturb the ALJ's decision unless it falls outside the available "zone of choice" defined by the evidence of record. Buckner v. Astrue, 646 F.3d 549, 556 (8th Cir. 2011). A decision does not fall outside that zone simply because the reviewing court might have reached a different conclusion had it been the finder of fact in the first instance. Id.; see also McNamara v. Astrue, 590 F.3d 607, 610 (8th Cir. 2010) (explaining that if substantial evidence supports the Commissioner's decision, the court "may not reverse, even if inconsistent conclusions may be drawn from the evidence, and [the court] may have reached a different outcome").

## IV. The ALJ's Decision

The ALJ's decision in this matter conforms to the five-step process outlined above (Tr. 10-23). The ALJ initially determined that Plaintiff had not engaged in substantial gainful activity since March 18, 2021, the amended alleged onset date of her disability. At step two, the ALJ found that Plaintiff had the severe impairments of degenerative disc disease of the lumbar spine, obesity, bilateral carpal tunnel syndrome, status-post bilateral carpal tunnel release and cubital tunnel release on the left, anxiety disorder, and major depressive order. The ALJ further found her cervical degenerative disc disease, headaches, possible early papilledema, sleep apnea, diabetes, and hypertension to be non-severe impairments. The Court explained that "her cervical disc disease does not result in any significant functional limitations and her other conditions are adequately controlled with medication and/or treatment" (Tr. 13). The ALJ determined at step three that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. The ALJ specifically addressed listings 1.15, 1.18, 12.04, and 12.06 (Tr. 13-15).

The ALJ next determined that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a) except that:

> [S]he can only stand and/or walk for a total of 2 hours during an 8-hour workday. She can sit for 6 hours in during [sic] 8-hour workday. She must be afforded the option to alternate between sitting and standing at 30-minute intervals, taking a minute or two to change positions. She can frequently, but not constantly use her hands for fine and gross manipulation. She should avoid climbing ladders, ropes or scaffolds. She can occasionally climb ramps and stairs. She can occasionally stoop, kneel, crouch and crawl. She can perform simple, routine job tasks in an environment with no fast-paced production rate demands or quotas. In addition, the claimant is capable of occasional, superficial contact with co-workers, supervisors and the general public.

(Tr. 15).

At step four, the ALJ concluded that Plaintiff is not capable of returning to her past relevant work as a nurse aide (Tr. 21). However, the ALJ found at step five that Plaintiff could perform other work as a lens inserter, toy stuffer, or touch-up screener (Tr. 21-22). Finally, the ALJ found that Plaintiff was not disabled within the meaning of the Act from her alleged onset date to the date of the decision (Tr. 23).

## V. Discussion

Plaintiff asserts that the ALJ's decision is not supported by substantial evidence on the record as a whole. Plaintiff argues that the ALJ erred at step two in determining her migraines were non-severe, and at step four in failing to adequately address the impact of her migraines in assessing her RFC. Plaintiff contends that her migraines will necessarily result in unscheduled breaks or absences from work, that the ALJ failed to address these additional limitations in making his RFC determination, and that he offered no explanation for adopting an RFC which did not account for such limitations. (ECF No. 13).

The Court agrees with Plaintiff that the record is underdeveloped as to the ALJ's consideration of her migraines. Because the Court finds the ALJ's decision did not adequately address Plaintiff's migraines in determining her RFC, it declines to address her argument that the ALJ erred in determining her headaches were non-severe.[2]

In his decision, the ALJ cited various medical records referencing several of Plaintiff's other impairments, her February 2022 Function Report, as well as opinion evidence from April and June 2022 (Tr. 18, 20-21). The ALJ made cursory mention of Plaintiff's migraines. In addition to stating generally that Plaintiff's "other conditions are adequately controlled with medication and/or treatment," the ALJ made the following reference to Plaintiff's migraines:

---

[2] On remand, the ALJ may nevertheless reconsider at step two the severity of Plaintiff's migraines.

> The claimant testified that she is unable to work due to chronic back pain, headaches, neck pain radiating to her arms, difficulty using her hands due to carpal tunnel syndrome and mental instability…
>
> Treatment notes dated June 25, 2021 [indicate] that the claimant denied any headaches…

(Tr. 16-17).  As relevant, the ALJ made no reference to provider treatment notes discussing Plaintiff's migraines, to the brain MRI and the lumbar puncture Plaintiff underwent in 2022 in an effort to diagnose her symptoms, or to her testimony regarding her limitations arising from the headaches.

In determining Plaintiff's RFC, the ALJ stated that he had considered "all [of Plaintiff's] symptoms and the extent to which they can reasonably be accepted as consistent with the evidence," as well all of Plaintiff's impairments, "including any that are not severe" (Tr. 15).  The ALJ further stated that "[a]fter careful consideration of the evidence," he found "the claimant's medically determinable impairments could reasonably be expected to cause some symptoms … however, her statements concerning the intensity, persistence and limiting effects of these symptoms are inconsistent with the evidence in the record for the reasons explained in this decision" (Tr. 16).  The ALJ concluded that his RFC determination was "supported by the absence of sufficiently convincing evidence the claimant suffers from any debilitating condition preventing her from performing sedentary, unskilled occupations such as those listed by the vocational expert" (Tr. 21).

"The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physicians and others, and an individual's own description of h[er] limitations.'"  Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004) (quoting McKinney v. Patel, 228 F.3d 860, 863 (8th Cir. 2000)); see also Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304, at *6 (Oct. 25, 2017) ("We will consider an individual's

statements about the intensity, persistence, and limiting effects of symptoms, and we will evaluate whether the statements are consistent with the objective medical evidence and the other evidence").

SSR 16-3p states that the ALJ's "determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." Id. at *10; see also Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1983) (setting forth factors the ALJ considers in determining RFC, including the duration, frequency, and intensity of the pain and functional restrictions); 20 C.F.R. § 416.929 (discussing the process for evaluating symptoms). In addition, the ALJ has an independent duty to neutrally develop the record, Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004), which may include obtaining medical evidence that addresses the claimant's "ability to function in the workplace," Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004) (quotation omitted).

It is not clear from the record before the Court that the ALJ adequately considered Plaintiff's migraines. Rather, the ALJ's decision makes cursory mention of Plaintiff's migraines and her subjective complaints of pain, and it makes no mention of the functional limitations she testified to—specifically, her need at the onset of a migraine to lay down for an hour or so in a quiet, dark spot. Similarly, the decision offers no discussion regarding the weight given by the ALJ to Plaintiff's subjective complaints of headache, and it provides no explanation for the ALJ's conclusion that her migraines were adequately managed with medication/treatment. All of this calls into question the resulting RFC assessment because it may not include all of Plaintiff's limitations. Given the VE's testimony regarding an employer's tolerance for unscheduled breaks

throughout the workday, had the ALJ adequately considered Plaintiff's migraines and associated limitations, this may have precluded a finding that Plaintiff could perform other work.  See Holmstrom v. Massanari, 270 F.3d 715, 722 (8th Cir. 2001) (where hypothetical posed to VE was based on an incorrect analysis of the claimant's RFC, the VE's response cannot constitute substantial evidence to support a conclusion that the claimant is not disabled).

The Commissioner argues that the ALJ documented a significant amount of evidence showing physical, neurological, and mental-status examinations that were normal or unremarkable for headache or migraine signs.  (ECF No. 18 at 15-16).  The Court notes that a portion of this evidence predates the onset of Plaintiff's headaches.  Even so, normal examination findings are not determinative here.  See Hahn v. Kijakazi, No. 1:21-CV-17-SPM, 2022 WL 4534420, at *6 (E.D. Mo. Sept. 28, 2022) (normal examination findings are not inconsistent with migraines because migraine headaches "cannot be proven or disproven by physical examinations or objective symptoms"; collecting cases).  Additionally, although an ALJ "may decline to credit a claimant's subjective complaints if the evidence as a whole is inconsistent with the claimant's testimony," Julin v. Colvin, 826 F.3d 1082, 1086 (8th Cir. 2016) (quotation omitted), the ALJ here makes no reference to the numerous medical records documenting Plaintiff's subjective complaints of headache and her related treatment, or any purported inconsistencies between her complaints and other objective medical evidence in the record.  Upon review of the evidence, Plaintiff's medical records from her healthcare providers—namely, NP Watkins, Dr. Eichhorn, and Dr. Farrenburg—demonstrate that she presented a consistent narrative of subjective complaints of headaches, and

that her doctors treated her accordingly. The Court therefore finds the Commissioner's argument unpersuasive.[3]

The Court is mindful of its obligation to defer to the ALJ's assessment of the subjective complaints. However, in light of the above-discussed issues and the importance of the analysis of subjective complaints in a case involving migraine headaches, the Court finds that the ALJ did not conduct an adequate analysis of Plaintiff's subjective complaints of migraines. Upon remand, the Commissioner shall obtain and provide the parties an opportunity to submit additional medical evidence that addresses Plaintiff's ability to function in the workplace, which may include contacting Plaintiff's treating health care providers to clarify her limitations and restrictions in order to ascertain what level of work, if any, she is able to perform. See Coleman v. Astrue, 498 F.3d 767, 771 (8th Cir. 2007); Smith v. Barnhart, 435 F.3d 926, 930-31 (8th Cir. 2006) ("On remand, the ALJ should consider the extent of Smith's impairment from seizures in evaluating Smith's residual functional capacity, and, if the evidence warrants, frame a revised hypothetical question to the vocational expert").

\* \* \* \* \*

For the foregoing reasons, the Court concludes that the ALJ's determination is not supported by substantial evidence on the record as a whole.

---

[3] The Commissioner also argues that none of Plaintiff's medical providers offered an opinion that headaches or migraines limited her ability to perform work activities. (ECF No. 18 at 16). The absence of an opinion, however, does not constitute substantial evidence supporting the ALJ's findings. Lauer v. Apfel, 245 F.3d 700, 705 (8th Cir. 2001).

Accordingly, **IT IS HEREBY ORDERED** that the decision of the Commissioner is **reversed** and this matter is **remanded** for further consideration.

A separate Judgment shall accompany this Memorandum and Order.

                                      */s/ John M. Bodenhausen*
                                      JOHN M. BODENHAUSEN
                                      UNITED STATES MAGISTRATE JUDGE

Dated this 1st day of November, 2024.